IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**GIH-SPE II, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 09-11205 (PJW)<br><br>Objection Deadline: July 9, 2009 at 4:00 p.m. (ET)<br>Hearing Date: July 16, 2009 at 9:30 a.m. (ET) |

## MOTION OF CANPARTNERS REALTY HOLDING COMPANY IV LLC FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Canpartners Realty Holding Company IV LLC ("Canyon" or, the "Lender"), a secured creditor of GIH-SPE II, LLC (the "Borrower" or, the "Debtor"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order, in substantially the form attached hereto as Exhibit A, pursuant to sections 105(a) and 362(d) of title 11 of the United States Code (the "Bankruptcy Code") granting relief from the automatic stay.

The facts and circumstances supporting this Motion are set forth in the attached affidavits of Richard Bosworth (the "Bosworth Affidavit," attached hereto as Exhibit B), a Senior Director of Canyon Capital Realty Advisors LLC, a member of Canyon; John F. Groom (the "Groom Affidavit," attached hereto as Exhibit C), the court-appointed receiver for the Debtor's property; and Scott D. Krueger (the "Krueger Affidavit," attached hereto as Exhibit D), a Nevada certified general appraiser, along with all attachments thereto. In further support of this Motion, Canyon respectfully represents as follows:

### STATUS OF THE CASE AND JURISDICTION

1. On April 6, 2009 (the "Petition Date"), Beresford Bancorporation, Inc., Bigwal, LLC, Frank O'Donnell, ICAG, Inc., Economy Currency Exchange, Windy Point

Properties, LLC, Dawn Place LLC, Foch Investments, and Hayner Group (collectively, the "Petitioning Creditors"), filed an involuntary petition (the "Involuntary Petition") against the Debtor for relief under chapter 11 of the Bankruptcy Code.

2. On June 2, 2009, the Petitioning Creditors filed a service of summons (the "Service of Summons") informing the Debtor that the Involuntary Petition had been filed against it seeking an order for relief under chapter 11 of the Bankruptcy Code. On June 15, 2009, the Petitioning Creditors, Canyon, and the Debtor stipulated and agreed that, notwithstanding Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the deadline for any answer, motion, or other response to the Involuntary Petition is extended through and including July 13, 2009, without prejudice to further extensions.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 362(d) of the Bankruptcy Code.

## BACKGROUND

### I. The Loan Agreement

4. On July 10, 2007, the Debtor and Canyon entered into a loan agreement (the "Loan Agreement," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 1), pursuant to which the Debtor obtained a loan from Canyon in the principal amount of $56,000,000 (the "Loan"). The Debtor used the proceeds of the Loan to purchase certain real property and improvements in Clark County, Nevada, commonly known as the Greek Isles Hotel & Casino (the "Property," a true and correct copy of the legal description and title of which is

attached to the Bosworth Affidavit as Exhibit 2).[1] To evidence the making of the Loan, and as part of the same transaction, the Debtor executed and delivered to Canyon a Promissory Note, dated as of July 10, 2007, in the original principal amount of $56,000,000 (the "Note," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 3).

   5. To secure payment of the Loan and as part of the same transaction, the Debtor delivered the following documents, among other things, to Canyon: (a) a Deed of Trust and Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of July 10, 2007, executed and delivered by Borrower to Nevada Title Company, as trustee, for the benefit of Lender (the "Deed of Trust," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 4), encumbering the Property, which was recorded on July 11, 2007 in the Official Records of Clark County, Nevada (the "Official Records") as Instrument No 0001159, Book 20070711; (b) an Absolute Assignment of Leases, Rents and Income, dated as of July 10, 2007, executed and delivered by Borrower in favor of Lender (the "Assignment of Leases," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 5), which was recorded on July 11, 2007 in the Official Records as Instrument No 0001160, Book 20070711; (c) a UCC-1 Financing Statement (the "Fixture Filing UCC-1," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 6), naming Borrower as Debtor and Lender as Secured Party, which was recorded on July 11, 2007 in the Official Records as Instrument No 0001161, Book 20070711; (d) a UCC-1 Financing Statement (the "Personal Property UCC-1, a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 7), naming

---

[1] The "Property" is a parcel of real property containing a hotel and casino and other improvements, located at 305 Convention Center Drive, Las Vegas, NV 89109, together with all leases, licenses, deposits, rents, issues and profits therefrom (all as more particularly described in the applicable loan and security documents). The Property is situated on land parcel # 162-09-805-015 and #162-09-805-016.

3

Borrower as Debtor and Lender as Secured Party, which was filed on July 20, 2007 with the Delaware Secretary of State as File No. 2007 2753803; and (e) a UCC-1 Financing Statement (the "Accounts UCC-1," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 8), naming Borrower as Debtor and Lender as Secured Party, which was filed on July 20, 2007 with the Delaware Secretary of State as File No. 2007 2753829 (collectively and together with the Loan Agreement, the Note, and all other documents that govern, evidence, secure, relate to, or arise out of the Loan, the "Loan Documents").

6. As evidenced by the Loan Documents, Canyon holds a perfected and unavoidable security interest in the Property, including all rents, revenues, income, issues, and profits therefrom.

7. Following the execution of the Loan Agreement, the Debtor immediately delegated all management responsibilities over the Property and entered into an Amended and Restated Turn-Key Lease Agreement (the "Lease Agreement," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 12) with Convention Center Drive Hotel and Casino LLC, a Nevada limited liability company (the "Hotel Lessee"). Under the Lease Agreement, the Hotel Lessee exercised control and management of the Property and all substantial business thereon. The Hotel Lessee remained in control and custody of the Property until the court-appointed receiver (the "Receiver") took possession on or around March 13, 2009.

8. The entire principal balance of the Loan, any and all accrued and unpaid interest thereon, and all other obligations thereunder, became due and payable on July 10, 2008, the maturity date under the Loan Agreement (the "Maturity Date"). The Debtor failed to repay the outstanding principal balance by the Maturity Date and, as a result, the Debtor has been in default since July 10, 2008.

9. As of June 17, 2009, the debt owed by the Debtor to Canyon was no less than $67,361,115.93, consisting of $55,843,991.23 in outstanding principal, $6,413,026.81 in unpaid contract interest, $3,312,793.81 in accrued default interest from the Maturity Date through June 17, 2009, $1,120,000.00 in unpaid fees, $439,976.20 in protective advances (beside attorneys' fees and expenses), $206,580.80 in attorneys' fees and expenses, and $24,747.08 in accrual on protective advances, plus interest that continues to accrue at the rate of $37,699.92 per day and additional fees and expenses due under the Loan Documents. Bosworth Affidavit at ¶19.

## II. Loan Default and Foreclosure Sale

10. By letter dated July 10, 2008, Canyon notified the Debtor that the Maturity Date had lapsed, and that the Debtor failed to repay the Loan on the Maturity Date as required under the Loan Documents, which failure constituted an immediate Event of Default under Section 10.1(a) of the Loan Agreement.

11. On December 12, 2008, Canyon caused a notice of default to be recorded in the County Records of Clark County, Nevada, as Instrument No. 0003439, Book 20081212 (the "Notice of Default," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 16). Following a motion by Canyon, the Receiver was appointed to take possession of the Property on February 9, 2009.

12. On March 10, 2009, the Debtor and Canyon, among other parties, entered into a settlement agreement (the "Settlement Agreement," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 17), pursuant to which the Debtor reaffirmed the Loan Documents and all liens, security interests and rights thereunder, executed a broad release of any claims against Canyon, and acknowledged that it had no defense against or claim arising from the Loan Documents.

13.     On or about March 12, 2009, Canyon recorded a Notice of Sale (the "Notice of Sale," a true and correct copy of which is attached to the Bosworth Affidavit as Exhibit 18) in the official records of Clark County, Nevada, which scheduled a foreclosure sale of the Deed of Trust for April 7, 2009 (the "Foreclosure Sale").

**III.     Imposition of Automatic Stay due to the Involuntary Petition**

14.     The Petitioning Creditors filed the Involuntary Petition on the day before the Foreclosure Sale scheduled by Canyon with respect to the Property. As a result of the Involuntary Petition, the Foreclosure Sale could not be completed and the Property is subject to the automatic stay under section 362 of the Bankruptcy Code.

15.     To ascertain whether the claims asserted by the Petitioning Creditors satisfied section 303(b)(1) and were "not contingent as to liability or the subject of a bona fide dispute as to liability or amount, " Canyon served requests for the production of documents and notices of deposition (the "Discovery Requests") on all Petitioning Creditors on May 7, 2009 (Docket Nos. 9-31). Pursuant to Bankruptcy Rule 7034(b)(2)(A), the Petitioning Creditors were required to produce the requested documents by 4:00pm (EST) on June 8, 2009. Following discussions, on June 15, 2009, the Petitioning Creditors and Canyon agreed to a revised schedule for complying with the Discovery Requests. Under this revised schedule, the Petitioning Creditors agreed to the first production of documents on or before June 22, 2009 and continuing through July 10, 2009.

16.     On May 15, 2009, the Court approved a joint stipulation between Canyon and the Debtors, with the consent of the Receiver, to allow the Receiver to remain in possession of the Property notwithstanding any turnover obligation under section 543(b) (Docket No. 37).

17. At all relevant times, the Debtor has not been in active control or management of the Property nor has the Debtor conducted substantial business on the Property, aside from the business of leasing the real estate. As such, the Property constitutes "single asset real estate" under sections 101(51B) and 362(d)(3) of the Bankruptcy Code.

**IV. Net Operating Losses**

18. The Property has been operating at a net operating loss even before debt service to Canyon. Based on the monthly reports generated by the Receiver, the net operating losses for the first four months of 2009 are in excess of $345,000.00, averaging approximately $86,700 in losses each month. Given the current economic conditions and the conditions of the gaming and hotel industries in Las Vegas in particular, revenues will likely continue to decline for the foreseeable future and net operating losses are projected to continue for at least the remainder of 2009. Groom Affidavit at ¶¶ 10-17.

19. Further, the revenues generated by the Property, after required operating expenses, are insufficient to provide payments to Canyon in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of Canyon's interest in the Property.[2]

20. Based on the appraisal report completed by Timothy R. Morse & Associates on the fair market value for the Property dated June 5, 2009 (the "June 2009 Appraisal," a true and correct copy of which is attached to the Krueger Affidavit as Exhibit 1), the Property is valued at $44,080,000.00. This value for the Property is more than $20,000,000.00 less than the amount of secured debt encumbering the Property and currently outstanding.

---

[2] Nothing contained herein is intended or should be construed as (i) an admission by Canyon that it is not entitled to default interest or (ii) a waiver of any claim of default interest.

## RELIEF REQUESTED

21. By this Motion, Canyon seeks entry of an order, pursuant to sections 105(a) and 362(d) of the Bankruptcy Code: (i) granting relief from the automatic stay; and (ii) permiting Canyon to proceed with its Foreclosure Sale of the Property.

## BASIS FOR RELIEF

22. Section 362(d) provides that the Court shall grant relief from the automatic stay "for cause" on request of a party in interest. 11 U.S.C. § 362(d); In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (noting that the automatic stay under section 362(a) is "not meant to be indefinite or absolute"). For the reasons set forth below, Canyon respectfully submits that it is entitled to and should be granted immediate relief from the automatic stay under sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code.[3]

### I. "Cause" Exists for Relief from the Automatic Stay under Section 362(d)(1)

23. Under section 362(d)(1), the automatic stay may be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest." In determining whether cause exists, courts generally look to whether the balance of hardships favors the moving party in comparison with the bankruptcy estate and the debtor. In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."); In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993); In re Rexene Prod. Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992); In re American Classic Voyagers Co., 298 B.R. 222, 225 (D. Del. 2003); In re W.R. Grace & Co., 2007 WL 1129170, *2 (Bankr. D. Del. 2007).

---

[3] Although this Motion only seeks authority under 11 U.S.C. § 362(d)(1)-(2), Canon does not waive any argument that relief may also be available and appropriate under § 362(d)(3) and specifically reserves the right to later argue that that provision applies in this case.

24. Adequate protection of a secured creditor's property interest "means it is entitled to have the value of its collateral maintained at all times, and it can obtain relief from the automatic stay and take back its collateral at any time if that interest is not adequately protected." In re Price, 370 F.3d 362, 373 (3d Cir. 2004). To determine adequate protection, "most courts engage in an analysis of the property's 'equity cushion'—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims." Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs.), 61 F.3d 197, 207 (3d Cir. 1995). Here, the lien on the Property is undersecured by more than $20,000,000.00 and the Debtor has no possible "equity cushion" with which to adequately protect Canyon's interests.

25. The Property is also operating at a net operating loss even before debt service to Canyon and such "persistent failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay." In re Price, 370 F.3d at 373; In re James River Assoc., 148 B.R. 790, 797 (E.D. Va. 1992) ("A continued failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay."); In re Augustus Court Assoc., 46 B.R. 619, 620 (Bankr. E.D. Pa. 1985) ("[C]ontinued failure to tender periodic payments to a secured creditor pursuant to the terms of an underlying loan can constitute 'cause' for relief under Section 362(d)(1)...."). The Property is no longer economically viable and is losing money on a daily basis. Considering the current global economic conditions and the acute financial crisis facing the Las Vegas gaming industries, the Property is unlikely to be profitable anytime in the foreseeable future. Since December 17, 2008, no monthly interest payments have been made to Canyon as required by the Loan Documents, and the interest on the debt to Canyon continues to accrue at the rate of $37,699.92 per day.

26. Based on the absence of any "equity cushion" and the mounting losses in outstanding loan payments and accrued interest, Canyon lacks adequate protection for its security interests in the Property and is entitled to relief from the automatic stay to complete the Foreclosure Sale. See In re Price, 370 F.3d at 373 ("If the value of collateral is threatened, creditors may seek adequate protection and relief from the automatic stay, giving the permission to foreclose on the property."); In re Elmira Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) ("[T]he secured creditor lacks adequate protection if the value of its collateral is declining in value as a result of the stay."); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact specific inquiry....but its focus is protection of the secured creditor from diminution of value of its collateral during the reorganization process."). Granting relief from stay is the only way to protect the interests of Canyon from the continued increase in administrative expense claims against the estate in operating a unprofitable venture.

27. The lack of good faith in commencing a chapter 11 case may also represent "cause" for granting relief from the automatic stay. See Barclays' American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.), 871 F.2d 1023, 1026 (11th Cir. 1989) ("[A] petition filed in bad faith also justifies relief from a stay."); In re Rabin, 53 B.R. 529, 530 ("An example of 'cause' requiring the court to grant relief from the automatic stay is the lack of good faith in filing a case under Chapter 11."); Furness v. Lilienfield, 35 B.R. 1006, 1011 (D. Md. 1983) ("Courts have found that if a Chapter 11 petition is not filed in good faith, grounds exist to either vacate the automatic stay or dismiss the petition.").

28. In determining whether a petition was filed in bad faith, courts have considered "the timing of the filing of the petition...[and] whether the petition was filed strictly

to circumvent pending litigation. See In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1027 (11th Cir. 1989); see also Furness v. Lilienfield, 35 B.R. 1011, 1012 (D. Md. 1983). In this case, the Involuntary Petition was intentionally filed on the day before the scheduled foreclosure in order to unnecessarily postpone the court-approved sale of the the Debtor's only asset. Matter of East-West Assoc., 106 B.R. 767, 771-72 (S.D.N.Y. 1989) (noting that factors supporting bad faith include: "(1) the debtor has only one asset, the property; (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is the subject of a foreclosure action as a result of arrearages on the debt; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights"); In re 801 South Wells Street Ltd. Partnership, 192 B.R. 718 (Bankr. N.D. Ill. 1996).

29. In addition to the timing of the Involuntary Petition, the Court may find bad faith under section 303 where the Petitioning Creditors lack standing to file the petition. Absent any contrary responses to its Discovery Requests, Canyon is informed and believes that some, if not all, of the Petitioning Creditors hold claims that are "contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1). Further, the Petitioning Creditors did not file a Service of Summons with this Court nor serve the Debtor with a summons or copy of the Involuntary Petition until nearly two months after the Petition Date. Given the timing of the filing and the questionable standing of the Petitioning Creditors, Canyon submits that the Involuntary Petition was filed in bad faith and the Petitioning Creditors have abused the judicial process solely to stall the Foreclosure Sale.

30. The Debtor is unable to provide Canyon with adequate protection for its secured interest in the Property and the filing of the Involuntary Petition on the eve of

foreclosure strongly suggests bad faith. As such, there is compelling cause to grant relief from the automatic stay to allow Canyon to complete its foreclosure on the Property. Canyon has been and continues to be significantly harmed by the effects of the automatic stay and the balance of hardships weigh heavily in favor of Canyon.

**II.     The Property is Not Necessary for an Effective Reorganization**

31.     Canyon is further entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code, which provides that relief must be granted if the debtor does not have equity in property and the property is not necessary for an effective reorganization. Section 362(d)(2) is clear and its application is mandatory. Matter of East-West Assoc., 106 B.R. 767, 771 (S.D.N.Y. 1989). ("Because Section 362(d)(2) is written in the disjunctive with Section 362(d)(1) a court must provide relief from the automatic stay either if adequate protection is not being provided or if the debtor has no equity in the property and the property is not necessary to an effective reorganization.").

32.     It is clear that the Debtor has no equity in the Property. The Property is the only asset of the Debtor and, as described above, the Property is encumbered with debts far in excess of its value. According to the June 2009 Appraisal, the Property is only worth $44,080,000.00 while the secured debt owed to Canyon is over $67,000,000.00. There is no reasonable likelihood that the Debtor will be able to effectively reorganize and the Property is "not necessary to an effective reorganization."

33.     Both the real estate market and the gaming industry in Las Vegas, Nevada have been adversely affected by the recent global recession and are suffering from significant declining revenues. An earlier appraisal of the fair market value of the Property dated December 31, 2007 (the "December 2007 Appraisal," a true and correct copy of which is attached to the

Bosworth Affidavit as <u>Exhibit 19</u>) valued the Property at $120,000,000. This rapid depreciation in property value in less than two years illustrates the extent of the losses experienced by the Las Vegas real estate industry and reinforces the unlikelihood of the Debtor's successful reorganization.

34. Given the Debtor's net operating losses and the depreciated appraisal value of the Property, the Debtor will be unable to rehabilitate its business in a timely manner. Therefore, the Property is not necessary for an effective reorganization and relief from the automatic stay is appropriate pursuant to section 362(d)(2) of the Bankruptcy Code.

35. For all the foregoing reasons, Canyon submits that the relief requested herein is warranted under sections 362(d)(1) and 362(d)(2) and is necessary to prevent further losses with respect to the Property.

## **NOTICE**

36. Notice of this Motion has been provided to: (i) counsel for GIH-SPE II, LLC; (ii) the Office of the United States Trustee; (iii) counsel for the Petitioning Creditors; (iv) counsel for Harold A. Rothstein; and (v) all parties having requested notice in the Debtor's chapter 11 case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

37. The Debtor has not previously sought the relief requested herein from this or any other Court.

WHEREFORE, Canyon respectfully requests that the Court enter an order, in substantially the form attached hereto, (i) granting relief from the automatic stay for Canyon to complete foreclosure on the Property pursuant to section 362(d); and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
June 19, 2009

Respectfully Submitted

SIDLEY AUSTIN LLP
Richard W. Havel
Christina M. Craige
Sarah E. Adamczyk
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

-and-

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

_____
Norman L. Pernick (No. 2290)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

*Counsel for Canpartners Realty Holding Company IV LLC*